UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
File No.: 5:16-CT-3301-FL

| | |
|---|---|
| RODNEY A. KOON,<br>        Plaintiff,<br><br>    v.<br><br>STATE OF NORTH CAROLINA and<br>BRYAN K. WELLS,<br>        Defendants. | **MEMORANDUM IN SUPPORT<br>OF MOTION FOR<br>SUMMARY JUDGMENT** |

NOW COME Defendants State of North Carolina (hereinafter "State") and Bryan K. Wells (hereinafter "Defendant Wells") (collectively, hereinafter "Defendants"), by and through undersigned counsel, and submits this Memorandum in support of their Motion for Summary Judgment. In summary, Defendants should be granted summary judgment because Plaintiff's claim is more akin to a medical malpractice claim, which is not cognizable under the American's with Disabilities Act (hereinafter "ADA") or 42 U.S.C. § 1983. Even if Plaintiff's claim is more than medical malpractice, Defendants are entitled to immunity under the Eleventh Amendment for Plaintiff's official capacity claims. Furthermore, Plaintiff's individual capacity claims are barred by the ADA; alternatively, Defendants Wells is entitled to qualified immunity. And lastly, Plaintiff has failed to satisfy the requirement of a valid ADA claim. Therefore, the Court should grant Defendants' Motion for Summary Judgment.

1

# I.    STATEMENT OF CASE

On November 7, 2016, Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 for alleged violations of the Americans with Disabilities Act by failing to provide him with a handicap library pass. DE-1. On August 25, 2017, the Court dismissed without prejudice Plaintiff's Complaint. DE-13. Plaintiff appealed the dismissal, and on December 21, 2018, the Fourth Circuit dismissed Plaintiff's appeal and remanded the matter for Plaintiff to file an Amended Complaint. DE-22. On January 30, 2019, Plaintiff filed his Amended Complaint. DE-27. On February 5, 2019, the Court entered its frivolity order allowing Plaintiff's claims to proceed. DE-28. On July 8, 2019, Defendants filed their Answer denying all claims. DE-36. On August 2, 2019, the Court entered its Case Management Order, requiring, among other things, that any "motion for leave to join additional parties or to otherwise amend the pleadings shall be filed by November 11, 2019." DE-38. Thereafter, Plaintiff (through the assistance of NCPLS) served discovery on Defendants. Defendants responded to the discovery requests. On March 13, 2020, NCPLS filed its response to Standing order 20-SO-1. DE-44. Discovery closed on March 13, 2020. *See* Text Order filed April 3, 2020. On April 27, 2020, Plaintiff filed his Motion to Amend. DE-46. This matter is ripe for summary judgment.[1]

---

[1] Plaintiff's Motion to Amend essentially requests permission to add another defendant. Even though the Court has not yet ruled on Plaintiff's Motion to Amend, the newly proposed defendant should also be entitled to summary judgment, whether it be for the reasons discussed herein or the reasons outlined in Defendants' Response in Opposition to Motion to Amend.

2

## II.    STATEMENT OF FACTS

On or about August 11, 2013, Plaintiff was a limousine driver hired to take a newlywed couple and their unborn child to the airport.  *See* Declaration of Counsel at ¶ 3 (attached hereto as **Exhibit 1**) (hereinafter "Counsel Dec.").  At that time, Plaintiff was still under the influence after "an all-night binge of crack cocaine." *Id.*  Plaintiff eventually caused the crash of the vehicle, which resulted in the death of the newlywed couple and their unborn child. *Id.*  On June 2, 2014, Plaintiff was convicted of two counts of Felony Death by Vehicle and one count of Involuntary Manslaughter for killing a newlywed couple and their unborn child. *Id.* at ¶ 4.  Plaintiff was given a combined sentence of more than 16 years. *Id.*  Since that time, Plaintiff has been incarcerated in the custody of the North Carolina Department of Public Safety (hereinafter "NCDPS"). *Id.*

The same crash that killed the newlywed couple and their unborn child also caused Plaintiff to suffer extensive damage to his right leg and left hip.  *See* Declaration of Diane Browning at ¶ 16 (attached hereto as **Exhibit 2**) (hereinafter "Browning Dec.").  On September 14, 2014, Plaintiff filed an Inmate Reasonable Accommodation Request Form (hereinafter "ADA Application"). *Id.*  At that time, Plaintiff was housed at Lanesboro Correctional Institution (hereinafter "Lanesboro CI").  *See* Declaration of Bryan Wells at ¶ 8 (attached hereto as **Exhibit 3**) (hereinafter "Wells Dec.").  In his ADA Application, Plaintiff acknowledges that he can climb stairs, but that it is difficult.  *See* Counsel Dec. at ¶ 5. In his ADA Application, he requested the following accommodation:

"To be declared disabled by DPS, since there are no jobs I can physically or successfully do while incarcerated which will not allow me to earn gain time or a wage." *Id.* at ¶ 5. On or about October 27, 2014, Plaintiff's ADA Application was approved. *Id.* at ¶ 5. Despite his ADA Application being approved, Plaintiff was never issued a handicap pass while at Lanesboro CI. *See* Browning Dec. at ¶ 12.

On or about March 17, 2016, Plaintiff was transferred from Lanesboro CI to Pender Correctional Institution (hereinafter "Pender CI"). *See* Wells Dec. at ¶ 8. On June 30, 2016, Plaintiff submitted a grievance alleging that he was not able to enjoy "the same privileges as other regular population inmates here at Pender CI," and specifically referencing the library, because he was not issued a handicap pass. *See* Counsel Dec. at ¶ 5. In order to respond to grievances regarding medical issues, the grievance investigator is trained to seek input from the medical unit. *See* Wells Dec. at ¶ 7. Specifically, NCDPS Policy requires that "clinical matters involving medical, nursing, mental health and dental judgments are the sole province of licensed health care providers." *Id.* In accordance with his training, Robert Norvell (the grievance investigator) contacted the medical unit and found that "[Offender Koon] requested a handicap card through medical however [his] request was denied by the unit provider on 6/17/16." *See* Counsel Dec. at ¶ 5.

On June 17, 2016, Nurse Practitioner Diane Browning reviewed a request for a *renewal* handicap pass for Plaintiff. *See* Browning Dec. at ¶ 12. She reviewed his medical

records, and saw that no handicap pass had ever been issued for Offender Koon. *Id.* Additionally, she saw that he was evaluated at his old facility (Lanesboro CI) in February 2016, and that no handicap pass was issued at that time. *Id.* Since there was no previously ordered handicap pass, Ms. Browning denied the request for a renewed handicap pass. *Id.* At the time that she reviewed the request, Ms. Browning was not aware that Plaintiff was an ADA inmate, and she did not know his ADA restrictions/accommodations. *Id.* at ¶ 14. At that point, she had been working for NCDPS for only a few months, and did not have access to all the information systems. *Id.* at ¶ 5.

On July 21, 2016, through the Step One response to his grievance, Offender Koon was told that he could attend the library for the regular population during the scheduled times because his request for a handicap pass was denied. *See* Counsel Dec. at ¶ 5. Furthermore, Offender Koon was provided "a DC-746, in accordance with Bumgardner v. NCDOC." *Id.* Offender Koon appealed the Step One response. *Id.* On July 25, 2016, the Step Two response was completed by Defendant Wells, who found that "staff has adequately responded to your complaint. Based on this information, the Step 1 response is appropriate and no further action is required." *Id.* Plaintiff appealed the Step Two response. *Id.* On August 25, 2016, the Step Three response was completed, which found that "staff has adequately addressed this inmate's grievance concerns." *Id.*

On October 18, 2016, Plaintiff was granted a handicap pass. *See* Browning Dec. at ¶ 15. On November 7, 2016, despite having been granted the relief he sought (i.e. the

handicap pass), Plaintiff filed the instant action seeking $700,000 in compensatory damages. DE-1. Plaintiff claims that he had to "climb over 14 steps to enter regular population library, resulting in immediate swelling of his knees." DE-27 at 7. However, Plaintiff's medical records do not show anything wrong with his left knee and show that the problems with his right knee started prior to his incarceration at Pender CI as a result of his car crash. *See* Browning Dec. at ¶ 16.

## III.   STANDARD OF REVIEW

Courts should grant summary judgment where "there is no genuine disputed as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Instead, the nonmoving party must "identify *affirmative evidence* from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Celotex Corp.*, 477 U.S. at 323. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industr'l Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). Courts have an affirmative duty to prevent factually unsupported claims from proceeding to trial. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

## IV.   LEGAL ARGUMENT

Defendants should be granted summary judgment because Plaintiff's claim does not amount to a violation of the Americans with Disabilities Act (hereinafter "ADA"), and therefore, the Court lacks subject matter jurisdiction. Alternatively, Plaintiff's individual capacity claim should be dismissed because the ADA does not allow individual capacity claims and Defendant Wells is entitled to qualified immunity.

7

Furthermore, Plaintiff's official capacity claim should be dismissed because Defendants are entitled to sovereign immunity and Plaintiff has failed to satisfy the elements of a claim under the American's with Disabilities Act. Therefore, the Court should grant Defendants' Motion for Summary Judgment.

## A.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Federal courts typically only have jurisdiction if the requirements of federal question or diversity of citizenship are satisfied. 28 U.S.C. §§ 1331, 1332. In this case, there is no diversity of citizenship because all the parties are residents of North Carolina. "While a plaintiff may properly invoke federal jurisdiction through the ADA, she must also allege facts which bring her claims within the ambit of that statute." *Doreen Shing v. Maryland Development Disabilities Admin.*, 2017 WL 1468903 at *4 (D. Md. April 25, 2017), *aff'd*, 698 Fed. Appx. 70 (4th Cir. 2017). The Fourth Circuit, four other Circuits, and this District have held that the ADA does not provide remedies for alleged medical malpractice. *See id.; Goodman v. Johnson*, 524 Fed. Appx. 887, 890 (4th Cir. 2013); *Fitzgerald v. Corr. Corp. of Amer.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *Kiman v. N.H. Dept. of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006); *McGugan v. Aldana-Bernier*, 752 F.3d 224, 232 (2d Cir. 2014) (found the same for the substantially similar Rehabilitation Act); *Justice v. White*, 2015 WL 537017 at *6 (E.D.N.C. Jan. 10, 2014).

Other "courts have held that plaintiffs may not bring actions under 42 U.S.C. § 1983, the Civil Rights Act, to vindicate rights created by Title II of the Americans with

8

Disabilities Act." *Townsend v. Biscoe*, 2011 WL 229305 at *7 (E.D. Tx. April 26, 2011) (citing *Vinson v. Thomas*, 288 F.ed 1145, 1156 (9th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003)).

The Third Circuit has held that "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Similarly, the Fourth Circuit has held that prison officials are not subject to supervisory liability for conduct of subordinate medical staff. *Miltier v. Beorn*, 896 F.2d 848, 854-855 (4th Cir. 1990).

Given the NCDPS Policy, it should be undisputed that Defendants were reliant upon the medical professionals at Pender CI to determine whether it was medically necessary for Plaintiff to be issued a handicap pass. NCDPS Policy requires that medical personnel (not correctional personnel) handle medical issues. *See* Wells Dec. at ¶ 4. Furthermore, Defendant Wells stated that when a request for handicap pass is received, medical personnel handles the request. *Id.* at ¶ 6. In this case, Ms. Browning denied Plaintiff's request for a handicap pass because she understood it to be a request for a renewal (when there was no prior issuance of a handicap pass). *See* Browning Dec. at ¶ 12. Defendants are entitled to rely upon Ms. Browning's decision. Therefore, Plaintiff is left challenging the opinions of a medical professional, which is much more akin to a medical malpractice claim. Since medical malpractice claims are not cognizable under the ADA, and § 1983 is not a valid avenue for ADA claims, Plaintiff's claim lacks subject matter jurisdiction and the Court should dismiss his claims.

9

**B.  DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY FOR PLAINTIFF'S OFFICIAL CAPACITY CLAIMS**

Even if the Court considers Plaintiff's alleged ADA violations under § 1983, Plaintiff's official capacity claims are barred by the Eleventh Amendment.  "The Eleventh Amendment bars suit in federal court against an unconsenting state and any governmental units that are arms of the state unless Congress has abrogated the immunity."  *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  The Eleventh Amendment is also applicable to state officers sued in their official capacity.  *See Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945).  When monetary damages are sought from a state officer in his/her official capacity, the "action is in essence one for the recovery of money from the state."  *Id.* at 464.  "Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *see also Green v. Kearney*, 203 N.C. App. 260, 268 (2010) ("Actions against officer of the State in their official capacities are actions against the State for purposes of apply the doctrine of sovereign immunity").

Since the State of North Carolina has not waived it sovereign immunity as to Plaintiff's claims under the ADA, Plaintiff's claim under the ADA can only proceed if the ADA abrogated North Carolina's sovereign immunity.  Congress can only abrogate the immunity provided by the Eleventh Amendment by "stating unequivocally its desire to

10

do so and only pursuant to a valid exercise of constitutional authority." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 484 (4th Cir. 2005). It is undisputed that Congress desired to abrogate States' Eleventh Amendment immunity in passing Title II of the ADA. *See Tennessee v. Lane*, 541 U.S. 509, 518 (2004). However, it is questionable "whether Congress had the power to give effect to its intent." *Id.*

In this case, "the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001). There are two situations under Section 5 of the Fourteenth Amendment that allow Congress to abrogate North Carolina's sovereign immunity: (1) for "cause[s] of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment," *U.S. v. Georgia,* 546 U.S. 151, 159 (2006); and (2) for "so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct," *Lane,* 541 U.S. at 518.

The Eastern District of Virginia recently dealt with a similar case involving only alleged violations of the ADA, without any alleged violations of the Fourteenth Amendment. *Zemedagegehu v. Arthur*, 2015 WL 1930539 at *8 (E.D. Va. April 28, 2015). The court found that "Plaintiff does not raise a claim under 42 U.S.C. § 1983 to vindicate any actual violations of his constitutional rights. Thus, the Court's decision on this issue is not controlled by *Georgia*." *Id.* Essentially, the Court was able to skip the first analysis

regarding actual violations of the Fourteenth Amendment and move directly to the second analysis regarding "so-called prophylactic legislation." *Id.*

In this case, Plaintiff has not alleged actual violations of the Fourteenth Amendment. Instead, his Complaint merely states a statutory cause of action under the ADA.[2] Therefore, only the second analysis is required – and it shows that North Carolina's immunity should not be abrogated.

### 1. No Valid Exercise of Congress' Powers

"In determining if a purported abrogation of sovereign immunity is a valid exercise of Congress's prophylactic enforcement powers under Section 5 of the Fourteenth Amendment, the Court applies the *City of Boerne* congruence and proportionality test." *Belk v. Smith*, 2013 WL 5430426 at *6 (M.D.N.C. Sept. 27, 2013) (citing *City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997)). The test includes the following three steps:

> (1) to identify the constitutional right or rights that Congress sought to enforce when it enacted Title II; (2) to determine whether Congress enacted Title II in response to a pattern of unconstitutional disability discrimination; and, (3) to determine whether the rights and remedies created by Title II are congruent and proportional to the constitutional rights it purports to enforce and the record of constitutional violations adduced by Congress.

---

[2] The Court's frivolity order mentions the Rehabilitation Act. DE-28 at 1. However, Plaintiff's Amended Complaint only references the ADA. DE-27 at 5. Even if the Court were to construe Plaintiff's Amended Complaint to encompass the Rehabilitation Act, summary judgment is still appropriate because the two statutes are nearly identical and commonly analyzed together. *See Halpern v. Wake Forest Univ. Health Sci.*, 669 F.3d 454, 461 (4th Cir. 2012). As such, for the reasons Plaintiff's ADA claim should be dismissed, his possible claim under the Rehabilitation Claim should similarly be dismissed.

*Id.* (quoting *Chase v. Baskerville*, 508 F. Supp. 2d 492, 499 (E.D. Va. 2007), *aff'd*, 305 Fed. Appx. 135 (4th Cir. 2008) (internal citations and quotations omitted)).

Normally, the third step is most critical.[3] In two district court cases within the Fourth Circuit, both in the prison context, courts have found Title II of the ADA to fail the third step. *Chase*, 508 F. Supp. 2d at 506; *Belk*, 2013 WL 5430426 at *9. Specifically, in *Chase*, the Eastern District of Virginia found that there was "little persuasive support for the proposition that Title II's comprehensive remedial scheme is an appropriately calibrated enforcement mechanism for [the Fourteenth Amendment] rights and the policy of judicial restraint in the prison context." *Chase*, 508 F. Supp. 2d at 501. The court stated that, "in the prison setting (1) Title II's goal of accessibility and accommodation is generally not congruent with the rights it implicates, and (2) Title II's indiscriminate demand for accommodation and accessibility on pain of money damages is wildly disproportionate to enforcing any constitutional rights." *Id.*

In *Belk*, the Middle District of North Carolina gave a similar ruling. *Belk*, 2013 WL 5430426 at *9. The court held that "[p]ermitting Tile II to abrogate state sovereign immunity…would convert services that has been offered purely as a matter of grace into vehicles of liability, and it would do so in the context of a system in which states have significantly more leeway in restricting individuals' constitutional rights." *Id.* The court

---

[3] Defendants do not concede the first and second steps, but, for brevity, opt not to address them in this Memorandum.

13

ultimately ruled that enforcing the rights created by Title II of the ADA "through an abrogation of state sovereign immunity is not a congruent and proportional response to the history of unconstitutional behavior identified by Congress." *Id.*

Other courts have similarly held that Title II of the ADA does not validly abrogate state sovereign immunity. *See, e.g., Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (employment context); *Leach v. Owens*, 2010 WL 5266063, at *5 (W.D. Tx. Dec. 15, 2010) (prison context); *Steele v. Thaler*, 2011 WL 739524, at *11 (S.D. Tx. Feb. 22, 2011) (prison context); *Dorn v. Mich. Dept. of Corr.*, 2017 WL 2436997, at *7 (W.D. Mich. June 6, 2017) (prison context).

For the same reasons noted in *Chase* and *Belk*, the Court should find that allowing Plaintiff to enforce rights he allegedly has under Title II of the ADA through an abrogation of North Carolina's sovereign immunity is not a congruent and proportional response, and therefore, dismiss Plaintiff's claim against Defendants in their official capacities due to the sovereign immunity afforded by the Eleventh Amendment.

## C.    PLAINTIFF CANNOT SHOW A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

In order to recover under the ADA, a plaintiff must show: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." *Spencer v. Easter*, 109 Fed. Appx. 571, 573

14

(4th Cir. 2004). Furthermore, compensatory damages (as opposed to injunctive relief) are only available "upon proof of intentional discrimination or disparate treatment." *Smith v. N.C. Dept. of Pub. Safety*, 2019 WL 3798457 at *3 (M.D.N.C. Aug. 13, 2019). As shown below, Plaintiff cannot satisfy any of these four elements.

1.   <u>Plaintiff Was Capable of Accessing the Regular Library</u>

Defendants do not deny that Plaintiff was evaluated in 2014 and determined to be disabled for the purposes of a job. However, the only accommodation requested at that time related to employment status so that Plaintiff could earn the maximum amount of gain time without having to actually work. *See* Counsel Dec. at ¶ 5. At that time, Plaintiff did not request (and has never formally requested through the appropriate channels) an ADA accommodation for access to the handicap library, despite having been given the ADA Application form at the conclusion of his Step One response. *Id.* In fact, Plaintiff has admitted that he was able to climb the stairs to access the regular library at Pender CI. DE-27 at 7. Furthermore, he was never issued a handicap pass at his prior facility, Lanesboro CI. *See* Browning Dec. at ¶ 12. Therefore, the Court should find that Plaintiff has failed to satisfy the first element.

2.   <u>Plaintiff Failed to Show a Denial of Benefits</u>

Other courts have held that in order to be "denied" access to a service, a plaintiff must allege that he "was *prevented* from participating in or benefiting from prison programs and services because of his disability. When an ADA claim does not state that

15

a plaintiff was excluded from a prison service or program because of his disability, it must be dismissed." *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 443 (S.D.N.Y. 2004) (emphasis in original); *Brown v. Va. Dept. of Corr.*, 2009 WL 87459 at *9 (W.D. Va. Jan. 9, 2009); *Manning v. Quick*, 2017 WL 3034624 at *6 (D. Colo. July 18, 2017); *Williamson v. Slusher*, 2017 WL 6805680 at *6 (N.D. Oh. Oct. 31, 2017); *see also Burgess v. Goord*, 1999 WL 33458 at *7 (S.D.N.Y. Jan. 26, 1999).

In *Carrasquillo*, the inmate alleged an ADA violation because his placement in housing far from services such as law library. 324 F. Supp. 2d at 443. The court dismissed his claim noting that plaintiff only alleged difficulty, not impossibility, in accessing particular services. *Id.* In *Manning*, the court similarly dismissed an inmate's ADA claim regarding the denial of elevator pass because the inmate could still access the prison programs using the stairs. 2017 WL 3034624 at *6. And lastly, in *Burgess*, the court dismissed an inmate's ADA claim regarding the denial of access to the recreation yard and religious services because, even though inaccessibility to his cane and the elevator made it more difficult for him to attend these services, it was not "tantamount to stating a claim of exclusion or discrimination." 1999 WL 33458 at *7.

Additionally, courts across the nation have rejected inmates' ADA claims based on a _delay_ in providing an accommodation. *Kiman*, 451 F.3d at 285 (delay in permitting use of cane not an ADA violation); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851 (E.D. Mich. 2008) (delay in providing inmate with a cane was not an ADA violation); *Goldblatt v.*

16

*Geiger*, 867 F. Supp. 2d 201, 211 (D.N.H. 2012) (delay in allowing telephonic hearings was not an ADA violation); *Ganstine v. Buss*, 2011 WL 6780956 at *4 (N.D. Fl. Dec. 27, 2011) (delay in providing inmate with CPAP, soft shoes, and wheelchair was not an ADA violation); *see also Mayfield v. Doe*, 2018 WL 5924392 at *6 (D.N.M. Nov. 13, 2018) (held "while a prison official's delay in accommodating an inmate's disability might be negligent, negligence alone cannot support a Title II claim").

In this case, Plaintiff was not _prevented_ from visiting the library at Pender CI. In fact, his own Complaint makes clear that he was able to access the library. DE-27 at 7. Instead, Plaintiff was temporarily denied access to the library he desired (i.e. the handicap library). Plaintiff's difficulty in accessing the regular library, and delay in gaining access to the handicap library, does not equate to a complete denial of access to the prison library. Therefore, the Court should find that Plaintiff's ADA claim fails the second element.

3.     <u>Plaintiff Failed to Allege Facts Sufficient to Show His Alleged Disability was the Cause of Any Alleged Denial of a Benefit</u>

For the third element, Plaintiff must show evidence that his alleged disability was "a motivating cause" of the discrimination. *Halpern*, 669 F.3d at 461. In order to be successful, the Fourth Circuit requires that the exclusion stem from "discriminatory intent due to any alleged disability." *Spencer*, 109 Fed. Appx. at 573 (citing *Bryant*, 84 F.3d at 249 (holding that the ADA is not "violated by a prison's simply failing to attend to the

medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled.")).

Plaintiff has not shown that his disabilities were the "motivating cause" in Defendants temporarily denying him a handicap pass. To the contrary, Plaintiff was receiving treatment for his disabilities before he went to Pender CI and while he was at Pender CI. *See* Browning Dec. at ¶ 16. Defendants relied upon the advice of medical professionals in determining whether Plaintiff was entitled to a handicap pass. *See* Wells Dec. at ¶ 9. Both Defendant Wells and Ms. Browning stated that they had no feelings of ill-will towards Plaintiff. *Id.* at ¶ 11; Browning Dec. at ¶ 17. Ms. Browning stated that she did not know Plaintiff was an ADA inmate with a climbing restriction at the time she denied his request. *See* Browning Dec. at ¶ 14. She said that had she known that information, she would have issued him a handicap pass. *Id.* Thus, her decision to deny his handicap pass was not based on a discriminatory intent, but rather a lack of relevant information. *Id.* Simply put, there is no evidence of discriminatory intent by Defendants. At most there is evidence of negligence, but negligence is insufficient to state a valid ADA claim. Therefore, the Court should find that Plaintiff's claim fails to satisfy the third element.

    4.    <u>Plaintiff Failed to Show Intentional Discrimination</u>

"While the Fourth Circuit has not specifically addressed the standard required for proving intentional discrimination, the majority of circuits to have decided the issue have

18

adopted a deliberate indifference standard, as have some district courts within the Fourth Circuit." *Smith*, 2019 WL 3798457 at *3 (compiling cases). Under the Eighth Amendment, deliberate indifference to a serious medical need requires proof (1) that, objectively, the prisoner was suffering from a serious medical need and (2) that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was provided. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 Fed. Appx. 745, 755 (4th Cir. 2018). As shown below, Plaintiff cannot satisfy any of these requirements.

a.    *Plaintiff Did Not Have an Objectively Serious Medical Need*

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). As stated above, correctional staff are entitled to rely on the advice of healthcare staff. *See Spruill*, 372 F.3d at 236; *Miltier*, 896 F.2d at 854-855. This is consistent with the NCDPS Policy Manual which states that "[c]linical matters involving medical, nursing, mental health and dental judgments are the sole province of licensed health care providers." *See* Wells Dec. at ¶ 4.

19

As stated above, since Plaintiff was able to climb the stairs to access the regular library, it is questionable whether Plaintiff suffered from an objectively serious medical condition. Assuming arguendo that Plaintiff suffered from an objectively serious medical condition, Defendants were not responsible for making the clinical decisions of evaluation and treatment – that decision was made by Ms. Browning. Defendants were entitled to rely upon the advice of Ms. Browning that Plaintiff's request for a handicap pass should be denied. Therefore, the Court should find that Plaintiff's medical condition was not objectively serious.

### b.    *Defendants Did Not Act with Deliberate Indifference*

Generally "deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302, (4th Cir. 2004) (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). Regarding prisoners complaints about medical care, the Supreme Court held that "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851.

In this case, it is clear that the decision to temporarily deny Plaintiff a handicap pass was based on the medical judgment of Ms. Browning. *See* Wells Dec. at ¶ 9. Ms.

Browning denied Plaintiff's request because she received it as, and treated it as, a request for a _renewed_ handicap pass. *See* Browning Dec. at ¶ 12. Since Plaintiff had never previously been issued a handicap pass, Ms. Browning denied the request. *Id.* Furthermore, at the time, Ms. Browning was unaware that Plaintiff was an ADA inmate with a climbing restriction. *Id.* at ¶ 14. If she had known his status and restrictions, she would have issued the handicap pass. *Id.* At most, Ms. Browning's decision to deny Plaintiff a handicap pass amounts to negligence. However, as stated above, mere negligence does not amount to deliberate indifference. Furthermore, even if her decision was negligent, Defendants were still entitled to rely upon it. Therefore, the Court should find that Defendants were not deliberately indifferent.

<i>c.</i>    <i>Delay in Plaintiff's Treatment Did Not Cause Substantial Harm</i>

To show the final element (delay results in substantial harm), other Circuits have required that a plaintiff to "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994); *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208-209 (1st Cir. 1990).

In this case, it is clear that Plaintiff's alleged knee problems were not caused by his climbing the stairs to access the regular library. To the contrary, his medical records show that his knee problems existed prior to his incarceration at Pender CI. *See* Browning Dec.

21

at ¶ 16.  Additionally, his medical records specifically reflect that his knee problems were caused by his car crash in 2013 – not climbing of stairs.  *Id.*  In fact, nowhere in his medical records does Plaintiff allege (or more importantly, a medical provider find) that his knee problems were caused by climbing stairs.  And lastly, Plaintiff has failed to allege (much less prove) that the delay in providing him access to the handicap library caused him to miss any court filing deadline or hinder any type of legal action.  Therefore, even if there was a delay in providing Plaintiff a handicap pass, it did not result in substantial harm to Plaintiff.

## D.  DEFENDANT WELLS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL CAPACITY CLAIMS

Even if the Court were to consider Plaintiff's ADA claims under Section 1983, it is clear that Plaintiff cannot bring an ADA claim against Defendant Wells in his individual capacity.  *See Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999) (affirming dismissal of individual capacity defendants).

Alternatively, Plaintiff has failed to show that Defendants violated any of his constitutional rights, and therefore, Defendant Wells should be granted summary judgment on the basis of qualified immunity.  The doctrine of qualified immunity protects government officials from actions for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions

22

at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, (1985)). "[I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526. "The test for qualified immunity is a two-pronged inquiry. The court must determine, in no particular order, (1) whether a constitutional right has been violated on the facts alleged and (2) whether the right was clearly established at the time so that it would be clear to an objectively reasonable officer that his conduct violated that right." *Adams v. Parsons*, 2011 WL 1464856 at *4 (S.D. W.Va. April 15, 2011) (citing *Saucier v. Katz,* 533 U.S. 194, 200–02 (2001)). Even if Plaintiff's constitutional rights were violated, Defendants Wells is entitled to qualified immunity because he relied upon the advice of Ms. Browning regarding a medical issue. Therefore, to the extent that the individual capacity claims are not dismissed for the reasons discussed above, Defendant Wells should be entitled to qualified immunity.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendants should be entitled to summary judgment.

Respectfully submitted this the 15th day of May, 2020.

JOSHUA H. STEIN
Attorney General

/s/ Alex R. Williams
Alex R. Williams (N.C.S.B. No. 41679)
Assistant Attorney General
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, North Carolina 27699-9001
Telephone: 919-716-6528
Facsimile: 919-716-6761
awilliams@ncdoj.gov

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and served the foregoing document on all non-CM/ECF participant(s) by depositing a copy in the U.S. Mail, postage prepaid, addressed as follows:

> Rodney A. Koon
> Inmate No. 0229602
> PO Box 460
> Badin, NC 28009

This the 15th day of May, 2020.

/s/ Alex R. Williams
Alex R. Williams
Assistant Attorney General
