IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3301-FL

| | |
|---|---|
| RODNEY A. KOON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| STATE OF NORTH CAROLINA, | ) |
| BRYAN K. WELLS, and DIANE R. | ) |
| BROWNING | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 47, 49). The motions were fully briefed, and the issues raised are ripe for decision. For the reasons that follow, the court grants defendants' motion and denies plaintiff's motion.

**STATEMENT OF THE CASE**

On November 7, 2016, plaintiff, a state inmate, filed this civil rights action pro se pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. On August 25, 2017, the court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915 and dismissed the action without prejudice. Plaintiff appealed. On December 21, 2018, the United States Court of Appeals for the Fourth Circuit dismissed the appeal and remanded the case to allow plaintiff to file an amended complaint. See Koon v. North Carolina, 746 F. App'x 206 (4th Cir. 2018) (per curiam).

On January 30, 2019, plaintiff filed the operative amended complaint. The court

conducted an initial review of plaintiff's amended complaint and allowed the action to proceed as to plaintiff's claims under the ADA and RA. Defendants answered the complaint, and, on July 9, 2019, the court appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to conduct discovery on plaintiff's behalf. On August 2, 2019, the court entered a case management order governing discovery and dispositive motions practice. On March 13, 2020, NCPLS filed a response to the discovery order and withdrew from its limited appointment as counsel for plaintiff pursuant to Standing Order 20-SO-1.

On May 12, 2020, plaintiff filed the instant motion for summary judgment, relying upon a memorandum of law, declaration, and supporting exhibits including the following: 1) North Carolina Department of Public Safety ("NCDPS") form for evaluation of impairment, 2) inmate request form, 3) sick call request, 4) grievance response, 5) administrative remedy forms, 6) plaintiff's medical records, 7) reasonable accommodation request determination form, and 8) correspondence.

Defendants filed the instant cross-motion for summary judgment on May 15, 2020, relying upon a memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising of the following: 1) declaration from counsel and exhibits of an online newspaper article, offender data information, plaintiff's ADA application and approval, and plaintiff's grievance records; 2) declaration of defendant Diane Browning ("Browning") and an exhibit of plaintiff's medical records; and 3) declaration of defendant Bryan K. Wells ("Wells"). On July 30, 2020, the court granted plaintiff's request to add defendant Browning as a defendant and noted that defendants included plaintiff's claims against defendant Browning in their pending motion for summary judgment.

On October 2, 2020, plaintiff filed a response in opposition to defendants' motion, relying upon an opposing statement of facts, appendix including the following: 1) additional medical records, 2) discovery responses from defendant Wells, and 3) additional NCDPS forms.

**STATEMENT OF THE FACTS**

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. On August 11, 2013, plaintiff was involved in a car accident and suffered serious injuries to his right leg and left hip. (Defs.' SOMF (DE 53) ¶¶ 1-2; Pl.'s SOMF (DE 62) ¶¶ 1-2). [1] On June 9, 2014, plaintiff was qualified as an ADA inmate based on his substantial limits on major life activities including climbing, lifting, pulling, pushing, and use of a cane. (Pl.'s Ex. A (DE 47-1) 1). On September 14, 2014, while incarcerated at Lanesboro Correctional Institution ("Lanesboro CI"), plaintiff made an ADA reasonable accommodation request by submitting an Inmate Reasonable Accommodation Request (IRAR) Form. (Defs.' SOMF ¶¶ 4, 7; Counsel Decl. (DE 54-1) ¶ 5 & Ex. C (DE 54-1) 8; Pl.'s SOMF ¶ 4). As for the accommodation requested, plaintiff sought "[t]o be declared disabled by DPS, since there are no jobs [he] can physically or successfully do while incarcerated which will not allow [him] to earn gain time or a wage." (Counsel Ex. C. at 8). On October 27, 2014, plaintiff's ADA reasonable accommodation request was approved. (Defs.' SOMF ¶ 8; Counsel Decl. ¶ 5 & Ex. C at 9; Pl.'s SOMF ¶ 8).

On March 17, 2016, plaintiff was transferred to Pender Correctional Institution ("Pender CI"). (Defs.' SOMF ¶ 10; Wells Decl. (DE 54-3) ¶ 8; Pl.'s SOMF ¶ 10). Pender CI has a regular library with two flights of stairs and a handicap library. (Pl.'s SOMF ¶¶ 9, 16 & Ex. D (DE 63-

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

3

4). During plaintiff's first visit to the Pender CI library, plaintiff was informed that he would have to use the regular library because he did not have a handicap pass. (Pl.'s Decl. (DE 47-2) ¶ 4). Each time plaintiff climbed the stairs to the regular library at Pender CI his right knee would swell and cause him pain. (Pl.'s Decl. ¶ 6). Between April and June 2016, plaintiff submitted multiple sick call requests regarding the issuance of a handicap pass. (Pl.'s Decl. ¶¶ 9-10; Browning Decl. (DE 54-2) ¶ 13). Plaintiff also wrote a letter to defendant Wells, Warden at Pender CI, regarding his inability to obtain a handicap pass for the handicap library. (Pl.'s Ex. (DE 47-1) 24-25; Wells Decl. ¶¶ 2, 9). On July 25, 2016, Wells responded to plaintiff's letter and stated there was no medical reason why he could not use the regular library. (Pl.'s Ex. G (DE 47-1) 7; Wells Decl. ¶ 9).

NCDPS has a division between correctional staff and healthcare staff. (Browning Decl. ¶ 7; Wells Decl. ¶ 4). Pursuant to NCDPS policy, "[c]linical matters involving medical, nursing, mental health and dental judgments are the sole province of licensed health care providers." (Browning Decl. ¶ 7; Wells Decl. ¶ 4). NCDPS policy also states that "healthcare will be accessible to all offenders through the sick call process, offender declared emergencies and/or telephone triage on a 24-hour, 7-day basis." (Browning Decl. ¶ 7; Wells Decl. ¶ 4). At Pender CI, an inmate may request a handicap pass by submitting a sick call request. (Browning Decl. ¶ 8; Wells Decl. ¶ 5). A nurse will then conduct a triage nursing evaluation of the inmate and make a request for a medical provider (doctor or nurse practitioner) to evaluate the inmate. (Browning Decl. ¶ 8; Wells Decl. ¶ 5). The medical provider will then evaluate the inmate and/or review his medical records to determine whether to grant a handicap pass. (Browning Decl. ¶ 8; Wells Decl. ¶ 5). Handicap passes have expiration dates and must be renewed periodically. (Browning Decl.

4

¶ 8; Wells Decl. ¶ 5). Only medical providers decide whether to grant an inmate a handicap pass. (Browning Decl. ¶ 9; Wells Decl. ¶ 6). If an inmate is denied a handicap pass, he has the option to complete an IRAR Form. (Wells Decl. ¶ 6). When correctional staff receive grievances from inmates about medical issues, they seek input from medical personnel as part of their investigation into the grievance. (Wells Decl. ¶ 7).

In September 2015, nurse practitioner Browning started working for the NCDPS and was assigned to Pender CI. (Browning Decl. ¶ 3). Browning was immediately granted access to the NCDPS medical charting system called Hero, which stores most of the patient's medical information. (Browning Decl. ¶ 5). Browning later obtained her credentials for the NCDPS White OPUS system, but still has not received credentials for the NCDPS Black OPUS system. (Browning Decl. ¶ 5). On June 17, 2016, Browning denied a request to renew a handicap pass for plaintiff because she reviewed his medical records in Hero and saw that there was no previously ordered handicap pass. (Browning Decl. ¶ 12). At that time, defendant Browning did not know that plaintiff had submitted multiple sick call requests to be issued a handicap pass between April and June 2016, or that plaintiff was an ADA inmate with a climbing restriction. (Browning Decl. ¶¶ 13-14).

On June 30, 2016, plaintiff filed a grievance alleging that he was being discriminated against because he could not use the handicap library and exercise room at Pender CI without a handicap pass. (Defs.' SOMF ¶ 11; Counsel Decl. ¶ 5 & Ex. D (DE 54-1)13-16; Pl.'s SOMF ¶ 11). On July 21, 2016, correctional staff provided a step one response and noted that plaintiff "had requested a handicap card through medical[,] however [his] request was denied by the unit provider on 6/17/16." (Counsel Ex. D at 14). Plaintiff was informed that he could attend the

5

regular gym and library because he did not have a handicap pass and was given an IRAR Form. (Id.) Plaintiff appealed to step two but never submitted an IRAR Form requesting a handicap pass and/or access to the handicap library. (Counsel Ex. D at 14; Wells Decl. ¶ 9). On July 25, 2016, defendant Wells provided a step two response and relied on defendant Browning's medical decision to deny plaintiff's grievance. (Counsel Ex. D at 15; Wells Decl. ¶ 9). Plaintiff appealed to step three. (Id.) On August 25, 2016, the Inmate Grievance Resolution Board dismissed the appeal. (Counsel Ex. D at 16). On October 18, 2016, plaintiff was provided a handicap pass by Dr. Joseph Maides. (Defs.' SOMF ¶ 26; Browning Decl. ¶ 15; Pl.'s SOMF ¶ 26 & Ex. R (DE 47-1) 20-21).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S.

6

242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.   Analysis

  1.   ADA and RA Claims

Plaintiff claims defendants violated the ADA and RA because they denied him a handicap

pass to access the handicap library at Pender CI even though he is an ADA inmate with a climbing restriction. See (DE 27) 5-7; (DE 47) 3-5. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The ADA and RA are generally construed to impose the same requirements due to the similarity of the language of the two acts. See Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999).

In order to recover under the ADA and RA, plaintiff must show: "(1) that he has a disability or has been regarded as having a disability; (2) that he is otherwise qualified to receive the benefits provided by a public entity; and (3) that he was denied those benefits or was otherwise discriminated against on the basis of his disability." Fauconier v. Clarke, 966 F.3d 265, 276 (4th Cir. 2020) (citing Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. 2018)). Under the ADA, the third step is met by a showing that disability played a "motivating role" in the adverse action; under the RA, plaintiff must show that any adverse action was taken "solely by reason" of his disability. See Constantine v. George Mason University, 411 F.3d 474, 498 n. 17 (4th Cir. 2005) (citing Baird, 192 F.3d at 469–70).

Viewing the record in the light most favorable to plaintiff, plaintiff has failed to demonstrate a genuine issue of material fact concerning whether any defendant denied him a handicap pass based on his disability. Rather, the record reflects that defendant Wells relied on defendant Browning's medical decision in responding to plaintiff's letter on July 25, 2016, and denying plaintiff's June 30, 2016, grievance. (Pl.'s Ex. G (DE 47-1) 7; Counsel Ex. D at 15; Wells Decl. ¶¶ 6, 9). Thus, the decisions made by defendant Wells were based on a medical

8

decision and not for any discriminatory reason. See Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under ADA and RA were properly dismissed for failure to state claim as they were based on medical treatment decisions); Spencer v. Easter, 109 F. App'x 571, 573 (4th Cir. 2004) (unpublished) (per curiam) ("Because there is no evidence in the record to suggest that any failure by the Defendants to obtain Spencer's medication in a timely manner stemmed from any discriminatory intent due to any alleged disability, we find that Spencer fails to establish a prima facie claim under the ADA."); Zelaya Sorto v. Doe, No. 5:18-CT-3242-FL, 2020 WL 5709249, at *6 (E.D.N.C. Sept. 24, 2020) (unpublished); Knowles v. Lewis, No. 5:11-CT-3113-FL, 2014 WL 1117966, at *12 (E.D.N.C. Mar. 20, 2014) (unpublished).

Furthermore, the record reflects that defendant Browning's denial of plaintiff's request to renew a handicap pass implicates, at most, negligence on defendant Browning's part, and the ADA does not provide a remedy for negligence. For example, in Goodman v. Johnson, 524 F. App'x 887 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit held that plaintiff's allegations that defendants failed to provide contact lenses instead of eyeglasses to treat his vision failed to allege denial of benefits on the basis of disability and noting "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." Id. at 890 (citations omitted). Similarly, in Miller v. Hinton, 288 F. App'x 901 (4th Cir. 2008) the court held that a prison's alleged denial of access to colostomy bags and catheters by inmate, who was a paraplegic confined to a wheelchair who used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in this manner because of his disability. Id. at 903; see also Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[The plaintiff] is complaining about incompetent treatment of his paraplegia. The ADA

9

does not create a remedy for medical malpractice."); Taylor v. Pulliam, No. 7:14CV00641, 2015 WL 4920788, at *6 n.12 (W.D. Va. Aug. 18, 2015) ("[The plaintiff's] allegations of inadequate medical care do not give rise to any cognizable ADA claim, because they do not suggest any discrimination because of a disability."). Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's ADA and RA claims.

2. Eighth Amendment Claims

Plaintiff alleges defendants were deliberately indifferent to his serious medical needs because they denied him a handicap pass to access the handicap library at Pender CI, and when he climbed the stairs to access the regular library his knee swelled and caused him pain. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted).

The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "subjectively the officials

10

acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837.

A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

Viewing the record in the light most favorable to plaintiff, plaintiff has failed to demonstrate a genuine issue of material fact concerning whether any defendant was deliberately indifferent to his serious medical needs. To the contrary, the record reflects that plaintiff received

11

medical care when defendant Browning reviewed his request for a renewal handicap pass and denied the request because there was no previously ordered handicap pass. (Browning Decl. ¶ 12). Moreover, plaintiff received medical care for his complaints of knee pain. (Browning Decl. ¶ 16 & Ex. A (DE 54-2) 8-28).

To the extent plaintiff believes that his serious medical needs required earlier or different treatment than he received, plaintiff's dispute constitutes a difference of opinion as to the proper course of medical treatment. See, e.g., Jackson, 775 F.3d at 178; Wright, 766 F.2d at 849; Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). At most, defendant Browning was negligent in denying plaintiff a handicap pass, which does not constitute deliberate indifference. See Estelle, 429 U.S. at 105–08; Jackson, 775 F.3d at 178; Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's Eighth Amendment claims.

C.  Plaintiff's Motion for Summary Judgment

Because the court has determined that, based on facts in the light most favorable to plaintiff, he has failed to establish a genuine issue of material fact precluding summary judgment on his ADA, RA, and Eighth Amendment claims, plaintiff's motion for summary judgment must fail. Accordingly, the court denies plaintiff's motion for summary judgment.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment (DE 49) and DENIES plaintiff's motion for summary judgment (DE 47). The clerk is DIRECTED to close this case.

12

SO ORDERED, this the 29th day of March, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge

13